**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

PRECISION IBC, INC.,            :
                                :
        Plaintiff,              :
                                :
VS.                             : CIVIL ACTION NO. 10-00682-CG-B
                                :
PCM CAPITAL, LLC, *et al.*,     :
                                :
        Defendants.             :

## REPORT AND RECOMMENDATION

This case is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 153) and Plaintiff's Motion to Strike Defendants' Exhibits 5 Through 11 (Doc. 176). Based upon a careful review of the above-referenced motions, supporting briefs, briefs in opposition, and the case file, the undersigned RECOMMENDS that Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 153) be denied with respect to Plaintiff's false advertising claim under the Lanham Act and Plaintiff's conspiracy claim, and granted with respect to Plaintiff's defamation claim. Additionally, the undersigned recommends that Plaintiff's Motion to Strike Defendants' Exhibits 5 through 11 (Doc. 176) be granted.

## I.  Background

Plaintiff Precision IBC, Inc. (hereinafter "Precision") filed the instant action[1] on December 10, 2010, against

---

[1] This is not the first litigation between these parties. Precision principal Thomas Weller filed two lawsuits against

(Continued)

Defendants PCM Capital, LLC (hereinafter "PCM"), Tote Liquid Systems Division (hereinafter "Tote Systems")[2], Van P. Finger (hereinafter "Van"), V. Palmer Finger, III (hereinafter "Palmer"), and HCB Publishing, Ltd. (hereinafter "HCB")[3]. (Doc. 1). Plaintiff filed an Amended Complaint (Doc. 25) on January 17, 2011, and subsequent thereto, sought and was granted leave to amend its Complaint a second time. (Docs. 125, 127). On May 26, 2011, Plaintiff added new factual allegations, and added Tote Systems International, LP, as an additional defendant. (Doc. 131)[4].

In the second Amended Complaint, Plaintiff alleges that Precision and Defendants PCM, Tote Systems, Van, and Palmer

---

Defendant Van Finger, the former owner and president of Precision. The first action sought to enforce the parties' shareholder agreement and was resolved through settlement. The second action was for defamation and ended with a jury verdict in favor of Thomas Weller. (Doc. 131 at 4-6).

[2] According to the motion to dismiss, Tote Systems is not a separate legal entity but a division of PCM. (Doc. 154).

[3] By Order dated April 19, 2011 (Doc. 80), the claims against HCB were dismissed without prejudice pursuant to a Joint Stipulation of Dismissal filed by Plaintiff and HCB.

[4] Plaintiff and Tote Systems International, LP reached an agreement that resulted in the entry of a Consent Order of Permanent Injunction and Judgment. (Doc. 194). Under the agreed upon Consent Order and Judgment, Tote Systems International, LP, its officers and employees are permanently enjoined from making false or misleading representations or distributing false or misleading representations concerning the construction, quality, efficacy, fitness and/or safety of Precision's tanks.

operate competing businesses that sell and lease intermediate bulk containers ("IBCs" or "tanks") designed to store and transport hazardous, degradable, and sensitive materials. According to Plaintiff, a portion of its 350-gallon stainless steel IBCs, which comprise 25% of its tank rentals, are imported from China and manufactured by China International Marine Containers (Group) Ltd. ("CIMC"). Plaintiff alleges that its products are manufactured of high quality materials and shipped in accordance with United Nations ("UN") and Department of Transportation ("DOT") specifications, including labeling which identifies the country of manufacture.

Plaintiff further alleges that Defendants are fully aware of Plaintiff's utilization of Chinese-made tanks, and have made statements that Chinese-made tanks are "lower quality" and have "serious quality issues" and have advised customers that they should "stay away from" Chinese IBCs, that they should "beware" of Chinese tanks and to "say no to Chinese IBCs", that the Chinese tanks are not UN/DOT compliant and may expose the consumer to "costly legal liability." Plaintiff alleges that the offending statements were made without prior knowledge of the safety of Chinese-made tanks and are literally false and intended to mislead IBC consumers about the nature, characteristics, and quality of Plaintiff's tanks, which were imported from China, in violation of Section 43(a) of the Lanham

Act (15 U.S.C. § 1125(a)). (Doc. 131 at 9-13). Plaintiff also alleges that Defendants published these defamatory statements concerning Plaintiff's products, knowing that the statements were likely to injure Plaintiff's business, reputation, and goodwill; thus, they are liable for libel per se. Additionally, Plaintiff alleges that Defendants conspired together and agreed to disseminate false advertising materials concerning Precision and its products. Plaintiff seeks Defendants' profits, the costs of corrective advertising, attorneys' fees, and injunctive relief[5].

Attached to Plaintiff's second Amended Complaint is the "About Us" section of Defendant Tote's website (Exh. 1), Plaintiff's October 6, 2010 request to Defendants TSI, Van, and Palmer to cease publication of "A Pioneering Pedigree" (Exh. 2), Plaintiff's November 3, 2010 retraction demand to Defendants Van and Palmer Finger and a response from Defendants' attorney dated November 15, 2010 (Exh. 3), and a color flyer stating, "Chinese made Portable IBC's... (Don't take the CHANCE!!)" and "Say NO to Chinese IBC's!" (Exh. 4).

On June 22, 2011, Defendants Van, Palmer, PCM, and Tote Systems filed the instant motion seeking the dismissal of

_____

[5] On May 26, 2011, Judge Granade granted Plaintiff's request for a preliminary injunction against Defendants. (Doc. 126).

Plaintiff's second Amended Complaint[6]. In the motion, Defendants do not deny posting or sending out advertising materials[7] containing the alleged statements but argue that Plaintiff's second Amended Complaint does not allege a concrete injury or causal relationship and should be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). According to Defendants, Plaintiff lacks Article III and prudential standing to bring a Lanham Act claim. Defendants also assert that Plaintiff has failed to state a false advertising claim under the Lanham Act, and has further failed to state a claim for either libel or conspiracy under Alabama law. (Id.)

Attached to Defendants' motion are a number of exhibits including, a trade journal article entitled "A Pioneering Pedigree" published in Hazardous Cargo Bulletin (Exh. 1); a printout of the FAQ section of Tote Systems' website before the offending statements were removed (Exh. 2); a flyer stating, "Chinese made Portable IBC's... (Don't take the CHANCE!!)" and "Say NO to Chinese IBC's!" (Exh. 3)[8]; an email solicitation

---

[6] Defendants' prior Motions to Dismiss (Doc. 13, 35) were rendered moot and thus were withdrawn as a result of amendments to Plaintiff's original Complaint.

[7] According to Defendants, the challenged statements include 1) the trade journal article; 2) the FAQ page; 3) an advertising circular; 4) and email communications. (Doc. 154).

[8] Also Plaintiff's Exhibit 4.

stating, "Chinese made Portable IBCs ... Not from us!" (Exh. 4); an accounting of all CIMC tanks returned between July 2010 and April 2011 (Exh. 5); an e-newsletter dated November 2010 which appears to come from Plaintiff's website (Exh. 6); the "Who We Are" section which purportedly comes from Plaintiff's website (Exh. 7); a section titled "Our Mission" which purportedly comes from Plaintiff's website (Exh. 8); a document with the heading "Precision Certified Safe" which purportedly comes from Plaintiff's website (Exh. 9); a printout of suppliers which purportedly comes from Plaintiff's website (Exh. 10); a chart listing the challenged statements and their purported sources (Exh. 11); and an affidavit from attorney Benjamin Coulter (Exh. 12). According to Defendants, the Court may consider Exhibits 1-4 without converting their motion into a motion for summary judgment because the materials are referenced in Plaintiff's second Amended Complaint and are central to Plaintiff's claim. (Doc. 154, at 2 n.1). Defendants state that exhibits 5-11 are submitted solely in support of their argument that this action is due to be dismissed under Fed. R. Civ. P. 12(b)(1). (Id. at 7 n.2; Doc. 183 at 3).

Plaintiff filed a brief in opposition to Defendants' motion, and a motion seeking to strike Defendants' Exhibits 5 through 11, which were attached to the motion to dismiss. (Doc. 176). Plaintiff argues that Defendants' exhibits 5 through 11

are improper submissions of extrinsic evidence and that the Court's review, under Fed. R. Civ. P. 12(b)(6), is limited to the allegations in Plaintiff's second Amended Complaint, which are to be taken as true. (Id.) Plaintiff also argues that Defendants' exhibits 5 through 11 are irrelevant, inadmissible, and unauthenticated. (Id.) The instant motions have been fully briefed and are now ripe for resolution.

## II. **Standard of Review**

### Rule 12(b)(1) and Rule 12(b)(6)

Defendants argue that the Court should evaluate that portion of its motion which challenges constitutional and prudential standing under Fed.R.Civ.P. 12(b)(1), and the portion of the motion which alleges that Plaintiff has failed to state a cause of action under Fed. R. Civ.P. 12(b)(6). Under Rule 12(b)(1), a defendant may move to dismiss a claim or claims for lack of subject matter jurisdiction. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008)(citations omitted). Challenges to subject matter jurisdiction can be either "facial" of "factual." See Spring Air Int'l, LLC v. R.T.G. Furniture Corp., 2010 U.S. Dist. LEXIS 114490, *4 (M.D. Fla. Oct. 19, 2010); McElmurray v. Consol.

Gov't of Augusta-Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007). Facial challenges are limited to a plaintiff's allegations, taken as true for purposes of the motion, whereas factual challenges encompass matters outside the pleadings and allow a district court to weigh the factual record. Lawrence v. Dunbar, 919 F. 2d 1525, 1529 (11th Cir. 1990).

The parties dispute whether Defendants have waged a factual or facial attack on this Court's jurisdiction. The undersigned finds that it is not necessary to resolve this issue because Defendant's arguments regarding standing and subject matter jurisdiction are more appropriately viewed as a challenge to the merits of Plaintiff's claim under Section 43(a) of the Lanham Act. Indeed, a review of Defendants' standing argument reveals that it contains more than a few statements regarding the deficiency of Plaintiff's claim on the merits. The crux of Defendants' constitutional and prudential standing arguments is that Plaintiff has not shown injury in fact and that its alleged damages are attenuated, indirect and speculative. These arguments are "inextricably intertwined" with the merits of Plaintiff's Section 43(a) claim.

To bring a claim under Section 43(a) of the Lanham Act, a plaintiff must have both constitutional and prudential standing[9]. Phoenix of Broward, Inc. v. McDonald's Corp., 489 F.3d 1156, 1161 (11th Cir. 2007). Article III or constitutional standing requires that a plaintiff allege "that (1) he has suffered an actual or threatened injury, 2) the injury is fairly traceable to the challenged conduct of the defendant, and 3) the injury is likely to be redressed by a favorable ruling." Id. The Eleventh Circuit has held that after determining constitutional standing, district courts should "consider and weigh the following factors" to determine whether a party has prudential standing to bring a false advertising claim under Section 43(a):

i) The nature of the plaintiff's alleged injury: is the injury of a type that Congress sought to redress in providing a private remedy for violations of the Lanham Act:

ii) The directness or indirectness of the asserted injury;

iii) The proximity or remoteness of the party to the alleged injurious conduct;

(iv) the speculativeness of the damages to the claim;

(v) The risk of duplicative damages or complexity in apportioning damages.

---

[9] "In every federal case, the party bringing suit must establish standing to prosecute the action." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004). Standing jurisdiction is comprised of "two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, ... and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction[.]'" Id. at 11-12.

<u>Phoenix</u>, 489 F. 3d at 1163-64.

To establish a false advertising claim under Section 43(a), a plaintiff must establish that the (1) advertisements of the opposing party were false or misleading; 2) the advertisements deceived, or had the capacity to deceive, consumers, 3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and 5) the movant has been — or is likely to be - injured as a result of this false advertising. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citation omitted). A side-by-side comparison of the <u>Phoenix</u> standing factors and the injury element of a false advertising claim strongly suggests that the jurisdictional and merits inquiries under Section 43(a) could overlap, and the undersigned finds that in this instance they do. As noted supra, Defendants' arguments regarding lack of injury are "inextricably intertwined" with the <u>Phoenix</u> factors which relate to the directness or indirectness of the asserted injury and the speculativeness of the damages.

When the facts necessary to sustain jurisdiction implicate the merits of the underlying claim, "[t]he proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case…[thereby forcing the defendant]

to proceed under Rule 12(b)(6) or Rule 56." Morrison v. Amway Corp., 323 F. 3d 920, 925 (llth Cir. 2003)(citations and ellipses omitted). Turcios v. Delicias Hispanas Corp., 275 Fed. Appx. 879, 880 (llth Cir. 2008)(the district court should only rely on Rule 12(b)(1) "[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action"); Marrero Enters. of Palm Beach, Inc., 2007 U.S. Dist. LEXIS 36816 at *6. As indicated above, the undersigned finds that Defendants' jurisdictional challenge is "inextricably intertwined" with the merits of Plaintiff's Section 43(a) claim; thus, under controlling Eleventh Circuit law, Defendants' jurisdictional challenge is to be evaluated under Rule 12(b)(6) as opposed to Rule (b)(1).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss under Rule 12(b)(6),

the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010); Wilchobe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009).

Additionally, under Rule 12(b)(6), reviewing materials beyond the pleadings that are not referenced in Plaintiff's second Amended Complaint and are not central to Plaintiff's claims, such as Defendants' exhibits 5-11, is impermissible. See, e.g., Broughton v. HPA Subway, Inc., 2011 U.S. Dist. LEXIS 37654 (S.D. Ala. Apr. 5, 2011); Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss [under Rule 12(b)(6)], ... the court limits its consideration to the pleadings and exhibits attached thereto.") (internal quotes omitted); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) (observing that analysis of a motion to dismiss is generally limited to the face of the complaint and any attachments) and 1369 ("However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion

of the motion into a motion for summary judgment.") (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). Accordingly, Plaintiff's motion to strike is granted, and Defendants' Exhibits 5-11 are hereby stricken. The Court will not consider any of those exhibits in ruling on the motion to dismiss.[10]

**III. Discussion**

**A. Standing under the Lanham Act[11]**

The intent of § 1125(a) of the Lanham Act is to protect commercial interests and provide a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising. Phoenix, 489 F.3d at 1168. Standing to bring a false advertising claim under the Lanham Act incorporates both Article III, that is, constitutional limitations, and prudential limitations. Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 225 (3d Cir. 1998); Bennett v. Spear, 520

---

[10] Moreover, it is not at all clear how Defendants' submission of information concerning Plaintiff's characterization of its financial condition at the time the proposed exhibits were posted to Plaintiff's website, a date unknown to the Court and not provided by Defendants, has any bearing on the allegations in the second Amended Complaint.

[11] Section 43(a) of the Lanham Act is primarily intended "to stop the kind of unfair competition that consists of lying about goods or services." U-Haul Int'l, Inc. v. Jartran, Inc., 681 F.2d 1159, 1162 (9th Cir. 1982).

U.S. 154, 162 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (citing
Warth v. Seldin, 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S. Ct.
2197 (1975)); see also Newdow, 542 U.S. at 11-12.

## 1. Article III standing

As noted supra, to satisfy the constitutional standing
requirement, a plaintiff must show (1) an injury, actual or
threatened, (2) that is fairly traceable to the actions of the
defendant, and (3) that likely will be redressed by a favorable
decision. Phoenix, 489 F.3d at 1161. In their motion to dismiss,
Defendants argue that Plaintiff's second Amended Complaint does
not allege an identifiable injury, that it only contains
generalized assertions of harm, and that it does not identify
any customers who were allegedly affected by the challenged
statements. Defendants also argue that Plaintiff has not
demonstrated a causal connection between the objectionable
statements and any injury allegedly sustained by Plaintiff.
(Doc. 154).

In this case, Plaintiff has alleged that Defendants, with
whom it is in direct competition, made false and misleading
statements regarding its Chinese-made tanks, that the statements
have the capacity to deceive existing and potential customers,
that as a result of Defendants' false advertising, it has
suffered loss of reputation, goodwill, and market position, and
that the purpose of the false advertising was to drive business

14

away from Precision in favor of Defendant Tote Systems. The undersigned finds that Plaintiff's allegations are sufficient to establish constitutional standing. See, e.g., Phoenix, 489 F.3d at 1161-62 (holding the complaint properly alleged an injury fairly traceable to the defendant based on the allegation that as a "'result of ... false advertising and unfair competition, customers were diverted from [the plaintiff], who accordingly not only lost profits due, inter alia, to reduced sales, but also incurred costs in connection with common counteractive efforts to retain those customers.'"); Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 177 (3rd Cir. 2001)("All that Article III's injury-in-fact element requires is 'an identifiable trifle' of harm."); Furniture "R" Us, Inc. v. Leath Furniture, LLC, 2008 U.S. Dist. LEXIS 74135 at *2 (S.D. Fla. Sept. 26, 2008) (holding that the plaintiff properly pled constitutional standing where "Plaintiff allege[d] in the complaint that the Defendant's advertisements had the capacity to deceive customers, who were diverted to [other] stores to Plaintiff's detriment."). Plaintiff has plead adequate factual content that allows the Court to draw a reasonable inference that Plaintiff was harmed by Defendants' actions, and that its claims for injunctive relief, disgorgement and attorney fees, will sufficiently redress its alleged injuries. Thus, Plaintiff has established constitutional standing.

## 2. Prudential standing

Prudential standing consists of a "set of judge-made rules forming an integral part of judicial self-government." <u>Conte Bros.</u>, 165 F.3d at 225 (quotations omitted). Federal courts adopt prudential limits on standing "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." <u>Id.</u> at 225 (quoting <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)).

As noted supra, in <u>Phoenix</u>, the Eleventh Circuit determined the five factors that district courts should weigh to test whether a plaintiff has prudential standing to bring a false advertising claim under § 43(a). 489 F.3d at 1163-64 (citing <u>Conte Bros.</u>, 165 F.3d at 233).[12] The undersigned will discuss each of the factors seriatim.

---

[12] To bring a false advertising claim under § 43(a), Plaintiff must establish that:

> (1) the advertisements of the opposing party were false or misleading;
> (2) the advertisements deceived, or had the capacity to deceive, consumers;
> (3) the deception had a material effect on purchasing decisions;
> (4) the misrepresented product or service affects interstate commerce; and

(Continued)

### a. type of injury alleged

The first factor requires the court to evaluate "whether the alleged injury is of a type Congress sought to redress in providing a private remedy for violations of the Lanham Act." Phoenix, 489 F.3d at 1167-68. As the Court explained in Phoenix, the purpose of the Lanham Act is to protect commercial interests from a competitor's false advertising and to protect the business community from having its reputation and goodwill diverted. Id. at 1168; see also 15 U.S.C. § 1127(explaining that the Lanham Act is designed "to protect persons engaged in . . . commerce against unfair competition"); Natural Answers, Inc. v. SmithKlineBeecham Corp., 529 F.3d 1325, 1332-33 (11th Cir. 2008)(observing that the injury must be the type of injury the Lanham Act is designed to obviate, such as loss of sales or increased promotional costs).

In this case, Plaintiff contends that its customers have been misled about the nature, quality, and characteristics of

_____

> (5) the movant has been - or is likely to be - injured as a result of the false advertising.

Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 745 F. Supp. 2d 1359, 1376 (S.D. Fla. 2010) (citing Hickson Corp., 357 F.3d at 1261). In the instant case, the injury element enumerated above at (5) will overlap with at least 2 of the Phoenix factors, the directness of the injury and the speculativeness of damages.

its Chinese tanks as a result of Defendants' false advertising. Plaintiff also contends that its customers have been mislead by Defendants' false claims that Plaintiff's Chinese-made tanks are untrustworthy and fail to meet UN/DOT specifications. (Doc. 131 at 15). According to Plaintiff, it has suffered damage to its market position, good will, and reputation as a result of Defendants' false advertising campaign, and this is type of harm the Lanham Act was intended to redress. Defendants acknowledge that while this factor almost always exists, it is not dispositive. Based on the foregoing, the undersigned finds that Plaintiff has alleged the type of injury that the Lanham Act is designed to address. Because Plaintiff competes head-to-head with Defendants, Plaintiff is at a competitive disadvantage if Defendants are able to advance their market position through false advertisements. Accordingly, this factor weighs in favor of prudential standing.

### b. directness of asserted injury

The second prong requires the Court to examine the "directness" with which Defendants' conduct affected Plaintiff. In other words, Plaintiff must allege a "casual chain" between its commercial harm and the alleged false advertising. Phoenix, 489 F.3d at 1169. The inquiry focuses on "whether the defendants' conduct has had a direct effect on either the plaintiffs or the market in which they participate." Harold H.

<u>Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 799 (5th Cir. 2011) (quotation omitted); <u>Natural Answers, Inc.</u>, 529 F.3d 1325 (because the plaintiff was not selling or promoting product at the time of the allegedly false advertising, it cannot claim to have suffered lost sales, lost market share, or increased promotional costs; thus, this factor weighs against prudential standing); <u>Logan v. Burgers Ozark Country Ham, Inc</u>., 263 F.3d 447, 461 (5th Cir. 2001)(holding that the second factor counseled in favor of prudential standing where the plaintiff alleged that the defendant's "false advertising about its own goods influenced its customers to buy its products instead of [the plaintiff's] product").

Indeed, in the typical false advertising case, "a plaintiff alleges that it lost sales and/or market share as a result of the defendant's false or misleading representations about some characteristic of the defendant's product or services." <u>Phoenix</u>, 489 F.3d at 1169. At the other end of the spectrum are those cases where the defendant's misrepresentations injure the plaintiff only by virtue of the intervening acts of some third party, and the alleged injury is deemed too indirect to support standing. <u>Huggins Realty</u>, 634 F.3d at 799.

In this case, Defendants argue that Plaintiff has failed to allege that Defendants actions have directly impacted the market or Plaintiff's sales. Defendants also note that Plaintiff's name

is never mentioned in any of the allegedly disparaging statements. According to Plaintiff's second Amended Complaint, Plaintiff and Defendants are direct competitors in the retail tank market, and Defendants have disseminated false information regarding the safety and quality of Plaintiff's Chinese-made tanks in an effort to destroy Plaintiff's reputation, goodwill and market position, and to increase their own market share. (Doc. 131) These allegations sufficiently demonstrate a causal direct relationship between Defendants' alleged misconduct and Plaintiff's claimed injury. The fact that Defendants never referenced Plaintiff by name in any of the advertisements is of no moment where the parties are in direct competition, and Defendants are alleged to have attacked the quality and safety of a specific product with the intent to harm Plaintiff's business, and with full knowledge that Plaintiff sells and leases the product, and that the representations were false. Accordingly, accepting Plaintiff's allegations as true, the undersigned finds that the second factor weighs in favor of prudential standing.

### c. Plaintiff's proximity to the alleged injurious conduct

The Court must next determine the proximity of Plaintiff to the alleged injurious conduct. In addressing this factor, the Court considers whether there is an "'identifiable class'" of

persons "'whose self-interest would normally motivate them to vindicate the public interest'" by bringing suit. Phoenix, 489 F.3d at 1170 (quoting Conte Bros., 165 F.3d at 234). "In other words, is there someone who has a greater interest than the plaintiff to advance the law suit and thereby vindicate the public interest? 'The existence of such a class diminishes the justification for allowing a more remote party ... to perform the office of a private attorney general.'" Trump Plaza of the Palm Beaches Condo. Ass'n v. Rosenthal, 2009 U.S. Dist. LEXIS 54450, *20 (S.D. Fla. June 24, 2009)(citations omitted).

The most appropriate party to bring a false advertising claim under Lanham Act are competitors who suffered a loss in customers and consequently suffered a loss in profits. Phoenix, 489 F.3d at 1171; Nature's Earth Prods. v. Planetwise Prods., 2010 U.S. Dist. LEXIS 114754, *12-13 (S.D. Fla. Oct. 28, 2010). In Phoenix, a Burger King franchisee filed suit against McDonald's alleging false advertising in connection with McDonald's promotional games advertisements. In addressing the proximity factor, the Eleventh Circuit stated as follows:

> [The plaintiff] alleges that as a direct
> result of McDonald's false and
> misleading representations regarding the
> high-value prizes, McDonald's lured
> customers away from [the plaintiff] and its
> affiliated franchisees, which, in turn, lost
> sales and market share. Accepting these
> allegations as true, we can think of no
> "identifiable class" of persons that is

> *more* proximate to the claimed injury
> than fast food franchisees such as [the
> plaintiff] and the putative class it
> seeks to represent. As such, the third
> factor weighs in favor of prudential
> standing."

Phoenix, 489 F.3d at 1171 (emphasis in original).[13]

In this case, there is no dispute that Plaintiff and Defendants are direct competitors. Defendants contend that because the allegedly disparaging statements were actually admonitions to "buy American" over Chinese manufactured IBCs and not about Plaintiff, Chinese manufacturers, distributors, and franchisors of IBCs are the obvious identifiable class with a greater interest than Plaintiff to advance the lawsuit and thereby vindicate the public interest. Plaintiff, on the other hand, counters that it is the most direct class of person to bring suit because Plaintiff, as opposed to the manufacturer of the Chinese tanks, is in direct competition with Defendants in the IBC retail sales market, and Defendants have attacked the quality and safety of the Chinese-made tanks sold by Plaintiff in an effort to harm Plaintiff's reputation, goodwill and market

---

[13] See P&G v. Amway Corp., 242 F.3d 539, 563-64 (stating that although distributors "probably do not have standing to sue under the Lanham Act" because the Act "does not give consumers standing to sue[,]" distributors "are more immediate to the injury than is [plaintiff-manufacturer]" and "could vindicate the public interest . . . by suing for fraud"); but see Conte Bros., 165 F.3d at 235 (concluding that motor-oil manufacturers had a more concrete interest in preserving the reputation of motor oil than the plaintiffs as retailers of engine additives).

position, and to increase their own market share. (Doc. 131 at 13). Accepting the allegations in Plaintiff's second Amended Complaint as true, the undersigned finds that Plaintiff, as Defendants' direct market competitor, is within the "identifiable class" of persons most proximate to the claimed injury, and whose self-interest would normally motivate them to vindicate the public interest in a false advertising claim; thus, this factor counsels in favor of a finding of prudential standing.

### d. speculativenes of alleged damages

The fourth factor requires the court to assess the speculativeness of damages alleged. "To state a damages claim that is sufficiently determinate to support Lanham Act standing, a plaintiff must plead that the defendant's anti-competitive conduct either has caused the plaintiff to lose profits or has caused the defendant to gain profits in a definite and ascertainable amount." Huggins Realty, 634 F.3d at 801. The degree to which standing must be supported with evidence depends on the stage of the litigation. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 352 (1992). In Phoenix, the Eleventh Circuit found that the nature of the plaintiff's alleged damages was speculative. In reaching this conclusion, the Court observed as follows:

> the fast food market consists of *many*
> competitors, only two of which are McDonald's
> and Burger King. In our view, it requires
> too much speculation to conclude that an
> ascertainable percentage of both the
> increase in McDonald's sales and the
> concomitant decrease in *Burger King's* sales
> during the several-year run of the games
> is directly  attributable to McDonald's
> alleged misrepresentations about the
> chances of winning high-value prizes.

489 F.3d at 1171.

In this case, Plaintiff states that it not seeking its own lost profits but is instead seeking injunctive relief to halt Defendants' false advertising, any monies gained by Defendants as a result of said advertising, the costs incurred as a result of "corrective" advertising on the part of Plaintiff, and attorneys' fees. (Doc. 131). Defendants argue that Plaintiff's damages are speculative because Plaintiff has acknowledged that it does not know and has no way of knowing how many of its customers or potential customers have seen the alleged false advertising and have made purchasing decisions based on said advertising. Defendants also argue that potential customers who visit Plaintiff's website would not be aware that Plaintiff sells or leases Chinese-made tanks and that because Plaintiff sells and leases both U.S.-made and Chinese-made tanks, under Plaintiff's theory, a potential customer would simply elect against doing any business with Plaintiff as a result of the advertisements which only reference Chinese-made tanks.

The undersigned finds that this factor counsels against prudential standing. Because the actual economic loss depends on consumers' reaction in a particular way to Defendants' advertisements regarding Chinese-made tanks, the amount of any resulting loss will necessarily be speculative and difficult to quantify. See Furniture "R" Us, Inc., 2008 U.S. Dist. LEXIS 74135 ("How can the Court or a jury discern what portion of [the Defendant's] revenue during the sale were the direct result of the deceptive advertising versus what was earned legitimately?"). See also Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487-1488 (11th Cir. 1987)(noting that the plaintiff must prove the defendant's sales in order to be entitled to an accounting of profits under § 1125(a)); KEG Techs., Inc. v. Laimer, 436 F. Supp. 2d 1364, 1372-73 (N.D. Ga. 2006) (noting that a plaintiff seeking monetary damages or an accounting of a defendant's profits for a violation of the Lanham Act must meet a higher standard of proof than a plaintiff seeking an injunction). Overall, the speculative nature of this factor weighs against prudential standing.

### e. risk of duplicative damages

The fifth and final factor requires the court to evaluate the risk of awarding duplicative damages or the complexity of apportioning damages. Courts applying this fifth factor have

examined the "number of potential claimants in the same position ... as the plaintiff." Phoenix, 489 F.3d at 1172. In Logan, 263 F.3d at 461, the Fifth Circuit determined that the fifth factor weighed in favor of prudential standing where there was only one competitor that could bring a false advertising claim, and the risk of duplicative damages was minimal. At the other end of the spectrum, the Eleventh Circuit, in Phoenix, concluded that this factor weighed against prudential standing because "[i]f we were to hold that Phoenix [one of approximately eleven thousand franchisees] has prudential standing to bring the instant claim, then every fast food competitor of McDonald's asserting that its sales had fallen by any amount during the relevant time period would also have prudential standing to bring such a claim." 489 F.3d at 1172.

Defendants allege that "every single Chinese manufacturer of IBCs, every seller of Chinese IBCs, every lessor of Chinese IBCs, every distributor of Chinese IBCs, every owner of Chinese IBCs, and even others would have prudential standing." (Doc. 154 at 18). In support, Defendants name nine Chinese IBC manufacturers it claims have a more direct interest in this litigation. Plaintiff claims that as a direct competitor in the same market with Defendants, it is entitled to protection, and the fact that Defendants' conduct could potentially subject them to additional lawsuits should not hinder Plaintiff's ability to

file suit.  Further, Plaintiff argues that the injunctive relief it seeks should curtail Defendants' potential legal exposure because the false advertising will be removed from commerce should the permanent injunction be granted.

This fifth factor is somewhat related to the third factor which focuses on the proximity or remoteness of the plaintiff's alleged injury to the defendants' conduct.  As noted supra, Plaintiff is more proximately injured by Defendants' conduct because as direct competitors, Plaintiff and Defendants are at the same level in the distribution chain.  Moreover, while Defendants claim that granting prudential standing to Plaintiff would subject them to duplicative damages, the undersigned finds that unlike the situation in <u>Phoenix</u>, where there were approximately eleven thousand potential franchisee plaintiffs, the market here is considerately smaller as it is restricted to those retailers who sell or lease Chinese made tanks in the United States.  <u>See</u> <u>Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.</u>, 505 F. Supp. 2d 245, 254 (D. Del. 2007) (observing that unlike other cases where a multitude of potential claimants could exist, expanding standing to other rum marketers in the U.S., where Plaintiff and Defendant were direct competitors, would not result in increased litigation and in fact, furthered the Lanham Act's purpose). Accepting Plaintiff's allegation as true, the undersigned finds that permitting standing here does

not raise a risk of granting standing to every retail seller or lessor of Chinese-made tanks with a bare claim of commercial injury, considering Plaintiff's claim that in engaging in the false advertising, Defendants directly targeted Plaintiff in the market. Thus, this fifth factor weighs in favor of a finding of prudential standing.

The Court is required to weigh the totality of the five factors to determine whether the allegations balance in favor of or against prudential standing. In Phoenix, the Eleventh Circuit indicated that while it was a close call, the plaintiff did not establish prudential standing. In reaching this conclusion, the Court held that although the plaintiff and the class it sought to represent were McDonald's "direct competitors," the plaintiff had alleged a competitive harm to their commercial interests, and were the most identifiable class of persons proximate to the claimed injury, there was no standing as the link between the alleged injury and McDonald's alleged misrepresentations was attenuated, the claimed damages were speculative, there was potential complexity in apportioning damages, and there was a significant risk of duplicative damages.

In this case, factors one, two, three, and five weigh in favor of prudential standing, and factor four weighs against. Thus, the undersigned finds that Plaintiff has prudential standing to assert its Lanham Act claim. Accordingly, the

undersigned recommends that Defendants' motion to dismiss count I for lack of subject matter jurisdiction be denied.

### B. Lanham Act Claim

Now that it has been determined that Plaintiff has standing, the undersigned must address Defendants' direct challenges to the sufficiency of Plaintiff's Lanham Act claim as pled in the second Amended Complaint under Rule 12(b)(6). As noted supra, to bring a false advertising claim under § 43(a), Plaintiff must establish that:

> (1) the advertisements of the opposing party were false or misleading;
>
> (2) the advertisements deceived, or had the capacity to deceive, consumers;
>
> (3) the deception had a material effect on purchasing decisions;
>
> (4) the misrepresented product or service affects interstate commerce; and
>
> (5) the movant has been - or is likely to be - injured as a result of the false advertising.

Miller's Ale House, Inc., 745 F. Supp. 2d at 1376 (citing Hickson Corp., 357 F.3d at 1261).

The statements at issue in this case are found 1) in the "A Pioneering Pedigree" article published in the Hazardous Cargo Bulletin and posted on Tote Systems' website; 2) in the FAQ section of Tote Systems' website; and 3) in printed and electronic advertisements and flyers generated by Defendants.

Defendants argue that the challenged statements are not false, misleading or deceptive. As noted supra,

## 1. falsity

To succeed on its Lanham Act claim, Plaintiff must show that the false advertisements are either literally false, that is, false on their face, or if literally true, that they "implicitly convey a false impression, are misleading in context, or likely to deceive consumers." Hickson Corp., 357 F.3d at 1261; see also Osmose, Inc. v. Viance, LLC, 612 F.3d 1298 (11th Cir. 2010). "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586-87 (3d Cir. 2002) (quoting Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 35 (1st Cir. 2000)). "If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction." Clorox, 228 F.3d at 33; see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002). Where statements are ambiguous or misleading, a plaintiff seeking injunctive relief must show that "the defendant's representations about its products have a tendency to deceive consumers while recovery of damages requires

proof of actual consumer deception." Am. Council of Certified Podiatric Physicians & Surgeons, 185 F.3d at 618 (internal quotation omitted).

At the motion to dismiss stage, the Court must accept as true the facts as pled in Plaintiff's second Amended Complaint as well as all reasonable inferences therefrom. See Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006). Moreover, at this juncture, Plaintiff is not required to submit proof of actual falsity.[14] In this case, Plaintiff has alleged that Defendants' advertisements are literally false and misleading because they suggest to the IBC-buying public that Plaintiff's Chinese-made tanks are unsafe and inferior to American-made tanks and that they do not comply with UN/DOT standards. Plaintiff further contends that its Chinese-made tanks are just as safe as Defendants' tanks and are compliant with safety standards, and that Defendants' advertisements have no basis in truth or fact. The undersigned finds that Plaintiff has sufficiently alleged that the referenced statements are false or misleading so as to avoid dismissal at this juncture.

## 2. direction of statements

---

[14] Literal falsity is typically an issue of fact to be determined at the summary judgment stage. See N. Am. Med. Corp., 522 F.3d 1211; Clorox, 228 F.3d at 35.

Defendants argue that the statements at issue are not about Precision but about Chinese-made tanks, that none of the statements refer to Precision or its products by name, and that none of the statements make a direct comparison; thus, the statements are not actionable under the Lanham Act. (Doc. 154 at 22-23). Plaintiff contends that Defendants' argument is disingenuous and that the false advertisement need not state the name of a company or its product in order to be actionable. (Doc. 175 at 25). According to Plaintiff, there is "no question" that Defendants' advertisements are directed at Plaintiff's Chinese-made tanks as Plaintiff is required by law to label its tanks with the country of manufacture. Plaintiff further alleges that internal communications from Defendant Van clearly demonstrates that the false statements regarding Chinese-made tanks were directed at Precision and were specifically designed to go after Precision's business.

The undersigned finds that even though the statements at issue do not mention Precision by name, Plaintiff's claim that the statements were directed at it is plausible. Indeed, taking Plaintiff's allegations as true, Plaintiff and Defendants are direct competitors in the retail IBC business, Defendants made statements about the quality of Chinese-made tanks with full knowledge that the statements were false and that Plaintiff sells and leases such tanks, and with the intent to go after

Plaintiff's tank business by creating the impression that Plaintiff's Chinese-made tanks were inferior to Defendants' tanks which were not made in China. Accordingly, Plaintiff has sufficiently demonstrated that the statements were directed at Precision. See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 162 (2d Cir. 2007) (finding irreparable harm and issuing injunction where Plaintiff's identity was obvious based on the ads even though ads did not specifically mention the plaintiff by name); McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 250, 256 (S.D.N.Y 2005) (same).

### 3. the article is commercial speech

Defendants also assert that the challenged statements in the trade journal article does not constitute commercial speech. While the Eleventh Circuit has not defined what constitutes "commercial speech," courts within this Circuit and others have recognized press releases, trade articles, and websites as commercial speech that is actionable under the Lanham Act. See, e.g., Osmose, 612 F.3d at 1323 (press release); Star-Brite Distrib. v. Kop-Coat, Inc., 2010 U.S. Dist. LEXIS 19244, *8-9 (S.D. Fla. Mar. 4, 2010) (press release); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 462 (D.N.J. 2009) (noting that "[c]ourts have applied the Lanham Act to just about every imaginable print and media form, including press releases, print ads, posters, and websites"); Sigma Dynamics,

Inc. v. E. Piphany, Inc., 2004 U.S. Dist. LEXIS 24254 (N.D. Cal. June 25, 2004) ("As statements on websites and in press releases are generally available to the public at large, they satisfy the commercial speech requirement for purposes of a motion to dismiss, although more may be required at a later stage of the litigation."); Novartis Consumer Health, Inc., 290 F.3d at 585-86 (applying an injunction to advertisements on the defendants' website); Semco, Inc. v. Amcast, Inc., 52 F.3d 108, 113 (6th cir. 1995) (trade article).

Several courts in this Circuit have applied the four-part test set out in Gordon & Breach Science Publishers, S.A. v. America Institute of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994) to determine whether a statement is commercial advertising or promotion. See. e.g., VG Innovations, Inc. v. Minsurg Corp., 2011 U.S. Dist. LEXIS 41756 (M.D. Fla. Apr. 18, 2011); Futuristic Fences v. Illusion Fence, Corp., 558 F. Supp. 2d 1270, 1279 (S.D. Fla. 2008); Optimum Techs., Inc. v. Home Depot USA, Inc., 2005 U.S. Dist. LEXIS 34776 (N.D. Ga. Dec. 5, 2005). Under the Gordon & Breach test, a false statement constitutes commercial advertising where the statement is

> (1) commercial speech; (2) by a defendant
> who is in commercial competition with
> plaintiff; (3) for the purpose of
> influencing consumers to buy defendant's
> goods or services. While the representations
> need not be made in a "classical advertising
> campaign," but may consist instead of more

> informal types of "promotion," the
> representations (4) must be disseminated
> sufficiently to the relevant purchasing
> public to constitute "advertising" or
> "promotion" within that industry.

Gordon & Breach, 859 F. Supp. at 1535-36.

In this case, the statements at issue satisfy Gordon & Breach test. In the "Pioneering Pedigree" article, Defendant Palmer Finger states that he "believes" consumers should know about pitting, which could affect the wall thickness of IBCs.[15] He explains that pitting problems have "the potential to throw you out of UN and DOT compliance," which could subject the consumer to legal liability. The article goes on to explain the existence of "problems" facing "both the industry and shippers alike" in imported Chinese totes, although it does not explain what the problems are, just that "there are some serious quality issues" with respect to imported Chinese totes. The article suggests that Tote Systems has eliminated these problems; therefore, the consumer should do business with Tote Systems. (Doc. 154, Exh. 1, 2). Clearly, the purpose of these statements

_____

[15] Regardless of whether or not the statements about "pitting" relate to Chinese-made tanks, the statements were "for the purpose of influencing consumers to buy [Tote Systems'] goods or services." Gordon & Breach, 859 F. Supp. at 1535-36. Cf. Kleiner v. First Nat'l Bank, 751 F.2d 1193, 1204 n.22 (11th Cir. 1985) ("[C]ommercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests ...").

was to influence consumers to purchase Tote Systems' IBCs rather than a competitor's Chinese-made IBCs.

It cannot be disputed that posting the article on the Tote Systems' website, which is accessible by the public at large, and in Hazardous Cargo Bulletin, would constitute sufficient dissemination under step four.[16] See Star-Brite Distrib., 2010 U.S. Dist. LEXIS 19244 at *9 (finding that allegations that the offending statements were placed in industry and online trade publication websites sufficiently showed dissemination to the buying public). Thus, the undersigned concludes that Plaintiff has adequately alleged that the statements in the trade article amount to commercial speech within the context of the Lanham Act.

### 4. statements of opinion and puffery

Defendants also contend that the statements at issue are not actionable under the Lanham Act because they are mere statements of opinion and at worst, they constitute puffery. Statements of opinion are generally not actionable. Osmose, Inc., 612 F.3d at 1311 (citing Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 496 (5th Cir. 2000) ("Bald assertions of superiority or general statements of opinion cannot form the

---

[16] Plaintiff also alleges the print and email flyers containing the alleged false advertisements were issued to a target audience of at least 1700 purchasers and lessors of IBCs.

basis of Lanham Act liability.")); cf. Robert Bosch LLC v. Pylon Mfg. Corp., 632 F. Supp. 2d 362, 366 (D. Del. 2009) (noting that "'when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statements, not that the statement is true'") (citations omitted). When analyzing false advertising claims, the statements must be viewed in its entirety and with consideration of the context in which they are presented. See 1-800 Contacts, 299 F.3d at 1248 ("It is true that a court must analyze the message conveyed in full context, and that the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." (citation and internal quotation marks omitted)); see also Clorox, 140 F.3d at 1180 ("In assessing whether an advertisement is literally false, a court must analyze the message conveyed within its full context.").

However, "[r]epresentations that the use of a particular product 'poses a considerable safety hazard' because of a risk of failure or that structures ... might be at risk ... arguably are reasonably interpreted as more than subjective statements regarding the efficacy or superiority of a product. Instead, they can be viewed as expressing an objective risk of serious consequences that fairly implies a basis for that statement." Osmose, Inc., 612 F.3d at 1311 (citation omitted).

In the trade article, the "statements of opinion" attributed to Defendant Palmer regarding serious safety concerns of Chinese tanks were made in a paragraph dealing with "problems" facing "both the industry and shippers alike" in a way which suggests that this is a proven and known fact. Further, the advertising material urging customers not to "take the CHANCE!!" and suggesting that Chinese tanks are "dangerous ... [and] environmentally taboo" could undoubtedly bring safety concerns to a customer's mind. The implication of these statements is that there have been issues or reports of faulty and unsafe IBCs imported from China and that Defendants are aware of these problems. The statements raise safety concerns which are not easily verifiable by customers, and they go beyond mere "opinion statements" by which no customer would be misled.[17]

In like manner, puffing or puffery has been defined as "'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely ....'" Clorox, 228 F.3d at 38 (quoting McCarthy § 27:38). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.

_____

[17] Likewise, simply by prefacing statements with "I think" or "I believe" or "In my opinion" or "I would advise" is not sufficient to support dismissal at the time. Cf. Nat'l Servs. Group v. Painting & Decorating Contrs. of Am., 2006 U.S. Dist. LEXIS 52205, *40 (C.D. Cal. July 17, 2006) (observing that even though offensive statement was preceded by the words "I think," it could reasonably still be construed to imply actual facts susceptible of being proved false).

Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." Newcal Indus. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008); Alpine Bank v. Hubbell, 555 F.3d 1097, 1106 (10th Cir. 2009) (advising that "context matters," and that "[t]he relative expertise of the speaker and the listener can be a critical factor").

More concisely, "specific and measurable advertisement claim[s] of product superiority ... [are] not puffery," and advertisements that urge customers to compare one product to another company's product have been found to suggest that a product's performance has been tested and verified. Clorox, 228 F.3d at 37; see also Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 946 (3d Cir. 1993) (finding statements that Pennzoil's motor oil provides "longer engine life and better engine protection" were not general claims of superiority or mere puffery, but instead were "specific and measurable by comparative research").

Plaintiff alleges that the Defendants' posts on the Tote Systems' website and in other advertising materials state that Chinese-made tanks are "lower quality" and "have serious quality issues" and advises customers that they should "stay away from," "say no to," and not "take the chance" with Chinese IBCs, that the "risks borne of using such units far outweigh apparent savings" and that these tanks are "dangerous, expensive, and

environmentally taboo." These statements include specific and measurable claims capable of being proven false or interpreted as statements of objective fact. In other words, whether or not Plaintiff's Chinese-made tanks have had safety problems is capable of being proven true or false. Specifically, statements that Chinese-made tanks are "lower quality" and "dangerous, expensive, and environmentally taboo" are representations of fact. Whether Chinese-made tanks are costly and fail to meet safety standards is not vague or subjective, characteristic of puffery.

The advertisements invite consumers to compare Defendants' American-made tanks, which Defendants would have the consumer believe meet all safety standards due to their country of manufacture, with Chinese-made tanks. See <u>Cornelius v. DeLuca</u>, 709 F. Supp. 2d 1003 (finding the statement: "I would stick w/Ergopharm and primaforce because syntrax has had label claim issues" not puffery because whether or not Syntrax has had problems with label claims is capable of being proven true or false); <u>Axcan Scandipharm Inc. v. Ethex Corp.</u>, 585 F. Supp. 2d 1067, 1082-1083 (D. Minn. 2007) (finding "compare to" language suggests that a product's performance has in fact been tested and verified). The statements at hand describe specific characteristics, which are meant to be a description and

representation of fact. Therefore, the statements are not puffery.[18]

In the motion to dismiss context, the Court must determine whether the factual allegations possesses enough "heft" to set forth a plausible entitlement to relief. <u>Twombly</u>, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966; <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (5th Cir. 2008)(internal quotation omitted). As noted supra, Plaintiff alleges that Defendants have engaged in false advertising by making literally false or misleading statements about the quality of Plaintiff's Chinese-made products, that the statements are intended to deceive consumers and are likely to cause IBC customers to question the quality and reliability of Precision's tanks in making purchasing decisions, that the statements were placed in interstate commerce via Defendant Tote Systems' website, specifically the FAQ section, print advertisements and flyers, and the subject trade journal article, "A Pioneering Pedigree," and that Plaintiff has suffered an injury in the form of loss in market placement, reputation, and goodwill. Construing Plaintiff's factual allegations in the light most favorable to it, the

_____

[18] Defendants are correct that the statements regarding UN and DOT compliance are in reference to "pitting." The effect of these comments is unclear. At this juncture, it is not clear that a reader of the "A Pioneering Pedigree" article would attribute pitting problems to tanks from China.

undersigned finds that Plaintiff has sufficiently alleged a false advertising claim that is plausible on its face.

### C. Libel

Plaintiff, in Count 2 of its second Amended Complaint, alleges that Defendants' statements about its tank business constitute libel <u>per se</u> because they published the defamatory statements concerning its tank business without justification or privilege. According to Plaintiff, Defendants knew these statements were false or published the statements with "reckless disregard" and knew that the statements were likely to injure Precision by "tarnishing its reputation and deterring consumers from doing business with Precision." (Doc. 131 at 17). Defendants counter that Plaintiff's libel claim fails as a matter of law, and that a claim for libel <u>per se</u> on behalf of a corporate entity is not cognizable in Alabama. (Doc. 154).

In order to establish a *prima facie* claim for defamation under Alabama law, a plaintiff must allege: 1) a false/defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. <u>See, e.g.</u>, <u>Delta Health Group Inc. v. Stafford</u>, 887 So.2d 887, 895–896 (Ala.

2004); <u>Gary v. Crouch</u>, 867 So.2d 310, 315 (Ala. 2003); <u>Nelson v. Lapeyrouse Grain Corp</u>., 534 So.2d 1085, 1091 (Ala. 1988). Some statements are subject to a qualified or conditional privilege -- that is, unless the statement was made with actual malice, the communicator of the statement cannot be held liable for defamation. <u>See, e.g.</u>, <u>Ex parte Blue Cross and Blue Shield of Alabama</u>, 773 So.2d 475, 478-479 (Ala. 2000). No defamation claim can lie where a plaintiff cannot show that the false statement was published concerning the plaintiff, because defamation is personal to the party defamed. <u>See, e.g.</u>, <u>Larrimore v. Dubose</u>, 827 So.2d 60, 61-62 (Ala. 2001)(providing that "[t]he general rule precludes a person from recovering for a defamatory statement made about another, even if the statement indirectly inflicts some injury upon the party seeking recovery[]").

While Defendants argue that Alabama law does not recognize a cause of action for libel or defamation, the undersigned finds otherwise. In <u>Gen. Elec. Credit Corp. v. Alford & Assoc., Inc.</u>, 374 So.2d 1316 (Ala. 1979), the appellee appealed a jury verdict awarding punitive damages to a corporation on the corporation's counterclaim. 374 So. 2d at 1318. On appeal to the Alabama Supreme Court, the court allowed the corporation to recover punitive damages on its libel claim, but the amount of the verdict was reduced. Thus, the Supreme Court of Alabama has recognized that a corporation can bring a defamation claim in

Alabama[19]. _See also_ _Hughes & Hughes Tire Co._, 76 F. Supp.2d 1312 (M.D. Ala. 1999)(rejecting defendant's contention that Plaintiff corporation could not pursue a defamation claim under Alabama law).

Although Alabama recognizes defamation claims by corporations, the undersigned finds that Plaintiff's defamation claim fails because Plaintiff has not alleged defamation that was personal to it. In other words, while Plaintiff has alleged that Defendants made defamatory statements concerning the Chinese-made tanks that Plaintiff sells and leases, and that the statements were made for the purpose of going after Plaintiff's business, the statements were about the Chinese-made tanks and not about Plaintiff. Because Alabama law precludes a person from recovering for a defamatory statement regarding someone else,

---

[19] Defendants' reliance on _City Ambulance of Alabama, Inc. v. Haynes Ambulance of Alabama, Inc._, 431 So.2d 537 (Ala. 1983) is misplaced. In _City Ambulance_, the Alabama Supreme Court was presented with the question of whether the court should recognize the novel torts of "unfair business competition" and "disparagement of business." Although much of the alleged unfair or disparaging activities involved the publication of false and misleading price quotes for the plaintiff's services, the plaintiff did not assert a defamation claim. The Alabama Supreme Court held that the Plaintiff's claims for "unfair business competition" and "disparagement of business" were subsumed by the Alabama tort of "interference with business relations," and it declined to create a separate tort similar to trade libel and call it "unfair competition." Unlike the _City Ambulance_ case, in this case, Plaintiff has alleged a traditional defamation claim as opposed to novel torts such as "unfair business competition" and "disparagement of business," which have not been recognized by Alabama courts.

Defendants' alleged false and disparaging comments regarding the quality of Chinese-made tanks which Plaintiff sells and leases is separate and distinct from disparaging comments about Plaintiff itself. Thus, Plaintiff's defamation claim must fail. See Temploy, Inc. v. Nat'l Council on Comp. Ins., 650 F. Supp. 2d 1145, 1156 (S.D. Ala. 2009)(finding Plaintiff Hard Hitters could not assert a viable defamation claim based on allegedly false statements about some other entity).

### D. Conspiracy Claim

In count 4 of Plaintiff's Second Amended Complaint, Plaintiff alleges that the Defendants conspired together and agreed to disseminate false advertising materials and defamatory statements regarding Plaintiff and its products in violation of the Lanham Act and Alabama law, and that their acts were committed with the specific intent to use illegal means to gain a competitive advantage over Plaintiff and to mislead Plaintiff's customers. (Doc. 131, p. 20). Defendants argue that because Plaintiff's underlying Lanham Act and libel claims fail, Plaintiff's conspiracy claim must likewise fail due to the absence of an illegal act.

In Alabama, a "[c]ivil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. The gist of an action alleging civil conspiracy is not the conspiracy itself but, rather, the

wrong committed." _Hooper v. Columbus Reg'l Healthcare Sys.,_
_Inc._, 956 So.2d 1135, 1141 (Ala. 2006) (citations omitted).
Stated differently, "liability for civil conspiracy rests upon
the existence of an underlying wrong and if the underlying wrong
provides no cause of action, then neither does the conspiracy."
_Flying J Fish Farm v. Peoples Bank of Greensboro_, 12 So.3d 1185,
1196 (Ala. 2008) (citations omitted). It is not necessary to
produce direct evidence of a conspiracy as such an agreement can
often be proved through circumstantial evidence derived from the
nature of acts done, relationship of the accused parties, and
other factors and circumstances showing a concerted action.
_Turner v. Peoples Bank of Pell City_, 378 So. 2d 706, 708 (Ala.
1979) (citing _O'Dell v. State_, 270 Ala. 236, 117 So. 2d 164
(1959).

     As noted supra, the undersigned has already determined that
Plaintiff's Lanham Act claim is sufficient to survive the
instant motion to dismiss. The undersigned further finds that at
this stage of the proceedings, where the facts and all
reasonable inferences are viewed in the light most favorable to
Plaintiff, Plaintiff's allegation that Defendants conspired
together to publish specific false and defamatory statements
about the quality of the Chinese-made tanks which Plaintiff
sells and leases in order to mislead Plaintiff's customers and
thereby gain a competitive advantage in violation of the Lanham

Act, is sufficient to state a conspiracy claim under Alabama law.

## IV.  Conclusion

For the reasons discussed herein, the undersigned RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 153) be denied with respect to Plaintiff's false advertising claim under the Lanham Act and Plaintiff's conspiracy claim, and granted with respect to Plaintiff's defamation claim. Additionally, the undersigned recommends that Plaintiff's Motion to Strike Defendants' Exhibits 5 through 11 (Doc. 176) be granted.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **17th** day of **October, 2011.**


_____/s/ Sonja F. Bivins_____
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.   *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[20] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[20] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                    **/s/ SONJA F. BIVINS_____**
                    **UNITED STATES MAGISTRATE JUDGE**